| | |
|---|---|
| **DISTRICT COURT, EL PASO COUNTY, COLORADO**<br>Address: 270 S. Tejon Street<br>Colorado, Colorado 80903<br>Telephone: (719) 452-5000 | DATE FILED: August 26, 2021 2:14 PM<br>FILING ID: FBE081864965F<br>CASE NUMBER: 2021CV31354 |
| **Plaintiff:**<br>Ricki Laahs,<br><br>v.<br><br>**Defendant:**<br>ManTech International Corporation. | COURT USE ONLY |
| *Attorneys for Plaintiff*:<br>Gregory E. Givens, Atty Reg. #41810<br>LAW OFFICES OF GREGORY E. GIVENS, P.C.<br>18 North Sierra Madre St., Suite E<br>Colorado Springs, CO 80903<br>Telephone:    719-291-4353<br>E-Mail:  gegivens@hotmail.com<br>            greg@givenslawpc.com | Case No.:<br><br>Div.: |
| **COMPLAINT** ||

Plaintiff Ricki Laahs, by and through undersigned counsel, hereby brings this Complaint against Defendant ManTech International Corporation, and as grounds thereof, states and alleges as follows:

**PARTIES, JURISDICTION, & VENUE**

1. Plaintiff Ricki Laahs is a resident of Jacksonville, North Carolina and was at all times relevant to this Complaint an individual residing in Colorado Springs, El Paso County, Colorado.

2. Defendant ManTech International Corporation. ("ManTech" or "Defendant") is and was at all times relevant to this Complaint a Virginia corporation with its principal place of business located at 2251 Corporate Park Drive, Herndon, Virginia 20171.

1

3. The courts of Colorado have jurisdiction over Defendant because it transacted business within the State of Colorado pursuant to C.R.S. § 13-1-124(1)(a).

4. Venue is proper pursuant to C.R.C.P. 98(c)(1) and (c)(5) because Defendant conducts business within El Paso County and the wrongful conduct was committed within El Paso County.

**FACTUAL BACKGROUND**

5. Plaintiff began employment with ManTech in or around January 2020 as a Systems Administrator for SecureView earning $95,000.00 per year.

6. Plaintiff's duties as a SecureView Systems Administrator included managing and maintaining systems for the U.S. Space Force. This entailed responding to customer needs involving machines that had SecureView software, updating and building machines with SecureView, and providing daily COVID-19 reports for the Joint Chiefs of Staff, J-6 Command, Control, Communications, and Computers/Cyber (C4).

7. When Plaintiff was out of the office, ManTech permitted her to do any job-related or career advancement training but didn't require Plaintiff to keep any log or written description of this training. Plaintiff kept a log for this training, in a Word document on her laptop, but only for her personal use so she wouldn't duplicate what she had already reviewed.

8. ManTech did not require Plaintiff to do this off-site training at any specific place such as her home and didn't require Plaintiff to do this off-site training during certain hours of the day, such as only during on-site working hours.

9. ManTech told Plaintiff that she was permitted to telework from anywhere, and at any hours, since her superiors and coworkers were doing the same thing.

10. Plaintiff performed her duties competently. She received no reprimands either orally or in writing and on several occasions received accolades for her performance.

11.    In or around October 2020, Plaintiff began dating Bradley Holsten, a co-employee and VTC Coordinator with ManTech.

12.    In or around December 2020, Plaintiff's relationship with Mr. Holsten started to deteriorate, to the point where Plaintiff and Mr. Bradley both contemplated ending their relationship.

13.    On or about January 4, 2021, Plaintiff drove with a friend, Cory Sarafin, from Colorado Springs to Washington D.C. Plaintiff desired to go to Washington to attend the January 6, 2021 protest of the November 2020 Presidential election and to hear former President Donald Trump's speech.

14.    Plaintiff and Mr. Sarafin arrived in Washington at around 1:30 p.m. and began walking along the Mall toward the Ellipse where President Trump had delivered his speech. Plaintiff and Mr. Sarafin then saw protestors walking in the other direction toward the U.S. Capitol and began walking in that direction.

15.    Sometime later, shortly after 2:00 p.m. EST, several protesters had breached the police barricades and entered the Capitol building with the purpose of disrupting Congressional proceedings.

16.    At no time did Plaintiff enter, or step foot inside, the Capitol building.

17.    At no time did Plaintiff ever destroy or vandalize any federal property, breach the peace, obstruct an official proceeding, obstruct Congress, trespass, parade, demonstrate, or picket inside the Capitol building, or violate any other law.

18.    At no time did Plaintiff ever incite or encourage anyone, or conspire with anyone, to breach the Capitol building, destroy or vandalize any federal property, breach the peace, obstruct an official proceeding, obstruct Congress, trespass, parade, demonstrate, or picket inside the Capitol building, or violate any other law.

19.     During her time at the Capitol on January 6, 2021, Plaintiff wore a red winter coat and a blue hat with the name "Trump", but was not wearing any attire which would have identified her as a ManTech employee.

20.     During her time at the Capitol, Plaintiff was not carrying any item that would be considered offensive or obscene to any reasonable person, such as a Confederate battle flag for example. Plaintiff also did not have any weapons on her person.

21.     Later in the day on January 6, 2021, Plaintiff sent Mr. Holsten five pictures and one video from her cell phone concerning her activities in Washington and at the Capitol. The pictures depict the following: (1) Plaintiff seated on an armored vehicle near the Capitol steps; (2) A view behind several protestors in a cloud of smoke about 150 feet from the Capitol entrance; (3) Plaintiff scaling the wall of the Capitol side landing with a rope; (4) Plaintiff walking away from the Capitol along Constitution Avenue; (5) Plaintiff standing in front of the Lincoln Memorial; and (6) a 13-second video of the protesters yelling "Let's go!" and with the phone panning to Plaintiff and Mr. Sarafin about 150 feet from the Capitol entrance.

22.     Plaintiff never posted the aforementioned photos or the video on Facebook, Instagram, Snapchat, TikTok, or any other social media platform.

23.     Between mid-January 2021 and March 3, 2021, around the time Plaintiff and Mr. Holsten broke up, Mr. Holsten began threatening Plaintiff that he would send the pictures and video of Plaintiff's activities at the Capitol to ManTech's Human Resources Department unless Plaintiff would acquiescence to his sexual demands.

24.     Following through on his threats, on or about March 7 or 8, 2021 Mr. Holsten did in fact send the pictures and video to Human Resources.

25.     Around the same time, Mr. Holsten contacted the Federal Bureau of Investigation to notify the agency about Plaintiff's activities at the Capitol. Mr. Holsten also notified ManTech that he had contacted the FBI.

26. On or about March 9, 2021, representatives from Human Resources interrogated Plaintiff for over two hours, primarily if not exclusively focusing on Plaintiff's activities at Capitol on January 6, 2021. Plaintiff explained that she had not entered the Capitol, had not engaged in any illegal activity whatsoever, and that the whole reason for this "interview" was because of Mr. Holsten's efforts to blackmail her.

27. During this interview or a follow-up interview, ManTech asked Plaintiff why she should be concerned about being blackmailed if she felt her activities at the Capitol were lawful.

28. At a follow up interview, ManTech asked Plaintiff whether she had told any of her coworkers that she had attended the Capitol protest, shared the pictures or video of her activities at the Capitol, told any coworkers that she felt she was being blackmailed due to her activities at the Capitol, or told anyone not affiliated with ManTech that she felt she was being blackmailed due to her activities at the Capitol.

29. During this interview and a follow-up interview, ManTech raised the issue of Plaintiff's time keeping. However, ManTech was only concerned with Plaintiff's time on January 5, 6, and 7, 2021 and never asked Plaintiff about her time for any other dates.

30. On March 12, 2021, ManTech sent Plaintiff a letter informing her that her employment with ManTech was terminated effective March 12, 2021 due to misconduct in violation of FA 701: Timesheet Accounting; HR 403: Employee Misconduct and Disciplinary Action policy; and the ManTech Standards of Ethics and Business Conduct (the "Standards").

31. ManTech didn't fire Mr. Holsten for his threats. Two weeks after he reported Plaintiff to Human Resources, Mr. Holsten resigned his employment but still holds his top secret security clearance.

32. Before January 6, 2021, ManTech never sent a directive to any of its employees that they were forbidden from attending the Capitol protest.

33. After her termination, Plaintiff learned, upon information and belief, that the reason she was discharged in such a rush was because ManTech was concerned the FBI would come to its office in Colorado Springs and march Plaintiff out in handcuffs.

34. In or around May 2021, agents with the Federal Bureau of Investigation interviewed Plaintiff about her activities at the Capitol. The FBI began by showing Plaintiff two maps of the Capitol Building grounds and asked her where she was and how long she was there. Plaintiff emphasized that she was in Washington for less than an hour, was not violent in any way, did not enter the Capitol, and that she didn't know that protestors had entered the Capitol until later that day. At no time did the agents ever indicate that Plaintiff would be charged with any crime. In fact, Plaintiff has never been charged as a result of her activities at the Capitol.

35. As of August 18, 2021, 615 individuals have been charged with crimes for their activities at the Capitol. Plaintiff is not one of them.

**FIRST CLAIM FOR RELIEF**
**(Violation of the Colorado Lawful, Off-Duty Activities Statute,**
**C.R.S. § 24-34-402.5)**

36. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 as though fully set forth herein.

37. The Colorado Lawful Off-Duty Activities Statute prohibits an employer from terminating an employee due to that employee's engaging in any lawful activity off the employer's premises during nonworking hours. C.R.S. § 24-34-402.5(1).

38. ManTech is an employer subject to the statute.

39. Plaintiff's above-described activities at the Capitol were lawful.

40. Plaintiff's activities at the Capitol were conducted off ManTech's premises during nonworking hours.

41. Plaintiff's activities at the Capitol did not relate to any bona fide occupational qualification of her employment with ManTech.

6

42. Plaintiff's activities at the Capitol did not relate to any of her on-the-job duties.

43. Plaintiff's activities at the Capitol did not create any actual or potential conflict of interest with her job responsibilities to ManTech.

44. ManTech terminated Plaintiff's employment because of her lawful activity at the Capitol on January 6, 2021.

45. ManTech thereby violated Plaintiff's rights under the statute.

46. The statute authorizes Plaintiff to bring this civil action for damages. C.R.S. § 24-34-402.5(2)(a).

47. As a direct and proximate result of ManTech's conduct, Plaintiff has suffered damages, entitling her to the recovery of damages, in amounts to be proven at trial, costs, and attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

1. Judgment in Plaintiff's favor and against Defendant;

2. Nominal damages;

3. Back pay, including loss of benefits;

4. Economic damages proximately caused by Defendant's unlawful termination of Plaintiff's employment;

5. Pre-and post-judgment interest at the maximum rates allowed by law;

6. Costs and reasonable attorney fees;

7. All other legal or equitable relief to which Plaintiff is entitled.

Dated: August 26, 2021                     LAW OFFICES OF GREGORY E. GIVENS, P.C.

*[Signed original at Law Offices of Gregory E. Givens, P.C.]*

 /s/ Gregory E. Givens
Gregory E. Givens, #41810
LAW OFFICES OF GREGORY E. GIVENS, P.C.
18 N. Sierra Madre Street, Suite E
Colorado Springs, CO 80903
Phone: (719) 291-4353
E-mail: gegivens@hotmail.com
*Attorneys for Plaintiff Ricki Laahs*

**Plaintiff's Address**
503 Southbridge Drive
Jacksonville, NC 28546

8